Robert G. Lancaster  S.B.N. 257504
Email:      rglancaster@bryancave.com
Kristy A. Murphy, S.B.N. 252234
Email:      kristy.murphy@bryancave.com
**BRYAN CAVE LLP**
120 Broadway, Suite 300
Santa Monica, California  90401
Telephone:  (310) 576-2100
Facsimile:  (310) 576-2200

Attorneys for Plaintiff
ISLE OF CAPRI CASINOS, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISLE OF CAPRI CASINOS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> LARRY FLYNT, As Individual and Trustee of the LARRY FLYNT REVOCABLE TRUST, CASINO, LLC, a California LLC and DOES 1 through 10, inclusive, <br><br> Defendants. | No. _____ <br><br> ***EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER TO STOP DEFENDANTS FROM INFRINGING THE LADY LUCK® AND LUCKY LADY® TRADEMARKS AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> [Filed concurrently with Declarations of Robert G. Lancaster, Mary P. Hogan and Andrew Blinn; and [Proposed] Temporary Restraining Order] |

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1   Plaintiff Isle of Capri Casinos, Inc. ("Isle of Capri" or "Plaintiff") hereby

2   applies for a temporary restraining order against defendants Larry Flynt, as an

3   individual and as Trustee of The Larry Flynt Revocable Trust, and Casino, LLC

4   (collectively, "Flynt" or the "Defendants"), and all those in active concert or

5   participation with Defendants, prohibiting them from using the marks LUCKY

6   LADY® or LADY LUCK®, or any formative thereof, or any confusingly similar

7   mark, in connection with any casino services, slot machine games, gaming

8   equipment, playing cards, clothing, merchandise, restaurant services, hotel services,

9   bar services, or any other goods or services related to casino services.

10   Plaintiff also requests that the Court schedule a hearing re preliminary

11   injunction and that the Court issue a preliminary injunction at said hearing enjoining

12   Defendants, and all those in active concert or participation with Defendants, from

13   using the mark LUCKY LADY® or LADY LUCK®, or any formative thereof, or

14   any confusingly similar mark, in connection with any casino services, slot machine

15   games, gaming equipment, playing cards, clothing, merchandise, restaurant services,

16   hotel services, bar services, or any other goods or services related to casino services.

17   Counsel for Plaintiff left a voicemail for Jonathan W. Brown, counsel for

18   Defendants on August 16, 2016, advising that Plaintiff would file this Application

19   on August 16, 2016 with the Western Division of the United States District Court,

20   Central District of California, and that they would deliver a copy of these papers by

21   email upon completion of filing.  Counsel for Plaintiff intends to deliver a copy of

22   these papers by email to counsel for Defendants by 3:00 p.m. PST on August 16,

23   2016.  These matters are detailed in the attached Declaration of Robert G. Lancaster.

24   This Application is made on the following grounds:

25   1.   Plaintiff Isle of Capri owns the federally registered marks LADY

26   LUCK® and LUCKY LADY®, which it uses on, among other goods and services,

27   casino services, online social casino gaming services, gaming equipment, playing

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

cards, slot machines and related services, dice, clothing, merchandise, restaurant services, hotel services, and bar services.

2.      Defendants are unlawfully using of Isle of Capri's LADY LUCK® and LUCKY LADY® marks in connection with the operation of a casino opened on or about July 29, 2016, called Larry Flynt's Lucky Lady Casino in Gardena, California and, despite the demand by Isle of Capri that it discontinue all use of Isle of Capri's LUCKY LADY® mark, Defendants have refused to stop using the mark.

3.      The Defendants' continued operation of the Larry Flynt's Lucky Lady Casino that uses Isle of Capri's LADY LUCK® and LUCKY LADY® marks, without its authorization, constitutes a violation of the Lanham Trademark Act and various other statutory and common law provisions.

4.      The Defendants' conduct has caused, and will continue to cause, irreparable injury to Plaintiff for which money damages will not be sufficient. Specifically, by reason of Defendants' unlawful acts, Plaintiff has suffered and will continue to suffer damage to its business, reputation and goodwill, as well as the loss of sales and profits Plaintiff would have realized but for Defendants' acts. Upon information and belief, unless restrained and enjoined, Defendants will continue to infringe and disparage Plaintiff's rights in the LUCKY LADY® and LADY LUCK® marks and continue to cause irreparable injury to Plaintiff by: (a) depriving Plaintiff of its right to use and control the use of its LUCKY LADY® and LADY LUCK® marks; (b) creating a likelihood of confusion, mistake and deception among consumers and the trade as to the source of the casino services and related services and goods sold under the infringing "LUCKY LADY" name; (c) falsely causing the public to associate Plaintiff with Flynt and/or its products and services, or vice versa; (d) causing harm to Plaintiff's goodwill and diluting the capacity of its LUCKY LADY® and LADY LUCK® marks to differentiate Plaintiff's services from others; and (e) causing Plaintiff to lose sales.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

5.      Additionally, the lewd and suggestive nature of the Defendants' ongoing use of Plaintiff's marks and the perceived association with Defendants' strip clubs and pornographic publications threatens immediate and irreparable injury to Plaintiff's goodwill before the matter can be heard on the usual notice.

6.      A balance of the hardships tips strongly toward Plaintiff, and the public interest would be served by granting an injunction.

In addition to the forgoing, this Application is based upon the attached Memorandum of Points and Authorities, the Declarations of Robert G. Lancaster, Mary P. Hogan and Andrew Blinn, the papers and pleadings filed in support of the Application, and upon such oral argument by counsel as the Court may entertain at the hearing.

Dated:   August 16, 2016                 Respectfully submitted,

**BRYAN CAVE LLP**
ROBERT G. LANCASTER

By:/s/ Robert G. Lancaster
        Robert G. Lancaster

Daniel M. O'Keefe, *pro hac vice pending*
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO  63102-2750
Tel:  (314) 259-2000
Fax:  (314) 259-2020
E-mail:  dmokeefe@bryancave.com


**DAVIS McGRATH LLC**
William T. McGrath, *pro hac vice pending*
Ross M. Drath, *pro hac vice pending*
125 South Wacker Drive, Suite 1700
Chicago, Illinois 60606
Telephone:  (312) 332-3033
Fax:  (312) 332-6376

Attorneys for Plaintiff
ISLE OF CAPRI CASINOS, INC.

3

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... iii

I.      INTRODUCTION ............................................................................................ 1

II.     STATEMENT OF FACTS ............................................................................... 2

        A.     Plaintiff Isle of Capri ............................................................................. 2

        B.     Plaintiff's LADY LUCK® and LUCKY LADY® Marks .................. 3

        C.     Flynt's Infringing Use of the Marks ..................................................... 7

        D.     The Irreparable Harm to Isle of Capri.................................................... 9

III.    LEGAL ARGUMENT ................................................................................... 11

        A.     The Standard for Obtaining a Temporary Restraining Order ............. 11

        B.     Plaintiff Will Succeed on the Merits of Its Infringement Claims ....... 11

               1.     Plaintiff Has Valid and Protectable Marks .............................. 12

               2.     Flynt's Use of the "Lucky Lady" Name for Their Casino Is
                      Likely to Confuse Consumers ................................................. 13

                      a.     Similarity of the Marks.................................................. 14

                      b.     Strength of the Mark...................................................... 15

                      c.     Relatedness of the Goods and Services.......................... 17

                      d.     Evidence of Actual Confusion. ...................................... 17

                      e.     Defendants' Intent. ........................................................ 18

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

f.      Marketing Channels. ...................................... 19

g.      The Likelihood of Expansion into Other Markets. ........ 19

h.      The Degree of Care Likely to Be Exercised by
        Purchasers........................................................ 20

C.    Plaintiff Will Succeed on Its False Designation of Origin Claim ...... 20

D.    Plaintiff Is Likely to Succeed on Its Unfair Competition Claim ........ 21

E.    Plaintiff Will Suffer Irreparable Harm without Preliminary Relief ... 21

F.    The Balance of Equities Favors Isle of Capri ..................................... 23

G.    A Preliminary Injunction is in the Public Interest .............................. 25

IV.   CONCLUSION ............................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*7-Eleven, Inc. v. Dhaliwal*,
2012 WL 5880462 (E.D. Cal., Nov. 21, 2012) ........................................22

*American Home Products Corp. v. Johnson Chemical Co.*,
589 F.2d 103 (2d Cir. 1978) ........................................25

*AMF Inc. v. Sleekcraft Boats*,
599 F.2d 341 (9th Cir. 1979) ........................................14, 16, 18, 20

*Applied Info. Scis. Corp. v. eBay, Inc.*,
511 F.3d 966 (9th Cir. 2007) ........................................12

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*,
174 F.3d 1036 (9th Cir. 1999) ........................................14, 19

*Cal. Hosp. Ass'n v. Maxwell-Jolly*,
No. Civ. S-10-3465 FCD/EFB, 2011 U.S. Dist. LEXIS 10523 (E.D. Cal. Jan. 28, 2011) ........................................11

*Cal. Med. Ass'n v. Douglas*,
Case No. CV 11-9688 CAS (MANx), 2012 U.S. Dist. LEXIS 12074 (C.D. Cal. Jan. 31, 2012) ........................................11

*Century 21 Real Estate Corp. v. Sandlin*,
846 F.2d 1175 (9th Cir. 1988) ........................................24

*Credit Counseling Ctrs. of Am., Inc. v. Budget & Credit Counseling Servs., Inc.*,
1997 WL 115645 (S.D.N.Y. 1997) ........................................17

*CytoSport, Inc. v. Vital Pharms., Inc.*,
617 F. Supp. 2d 1051 (E.D. Cal. 2009) ........................................22, 25

*Dawn Donut Co. v. Hart's Food Stores, Inc.*,
267 F.2d 358 (2d Cir.1959) ........................................19

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

iii

*Earth Island Inst. v. Evans*,

   256 F. Supp. 2d 1064 (N.D. Cal. 2003)................................................25

*eBay Inc. v. MercExchange, L.L.C.*,

   547 U.S. 388 (2006) ..........................................................................24

*Electropix v. Liberty Livewire Co.*,

   178 F. Supp. 2d 1125 (C.D. Cal. 2001)..............................................20

*Entrepreneur Media, Inc. v. Smith*,

   279 F. 3d 1135 (9th Cir. 2002).....................................................14, 21

*Fin. Exp. LLC v. Nowcom Corp.*,

   564 F. Supp. 2d 1160 (C.D. Cal. 2008)..............................................17

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*,

   618 F.3d 1025 (9th Cir. 2010).....................................................13, 16

*Garrett v. City of Escondido*,

   465 F. Supp. 2d 1043 (S.D. Cal. 2006) ..............................................11

*GoTo.com, Inc. v. Walt Disney Co.*,

   202 F.3d 1199 (9th Cir. 2000).....................................................14, 18

*Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*,

   736 F.3d 1239 (9th Cir. 2013)...........................................................22

*Johanna Farms, Inc. v. Citrus  Bowl, Inc.*,

   468 F. Supp. 866 (E.D.N.Y. 1978).....................................................19

*Kellogg Co. v. Nat'l Biscuit Co.*,

   305 U.S. 111 (1938) ..........................................................................17

*Kendall-Jackson Winery, Ltd. v. E & J. Gallo Winery*,

   150 F.3d 1042 (9th Cir. 1998)...........................................................16

*Lahoti v. VeriCheck, Inc.*,

   586 F.3d 1190 (9th Cir. 2009)...........................................................17

*Laverne Internat'l, Ltd. v. American Institute of Interior Designers, Inc.*,

   353 F. Supp. 659 (S.D.N.Y. 1973).....................................................22

Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

iv

*Menendez v. Holt,*

    128 U.S. 514 (1888) ..................................................................................... 15

*Mortgage Electr. Registration Sys., Inc. v. Brosnan,*

    2009 WL 3647125 (N.D. Cal., Sept. 4, 2009) ................................. 20, 21

Network Automation, Inc. v. Advanced Sys. Concepts, Inc.,

    638 F.3d 1151 (9th Cir. 2011) .................................................................. 18

*Official Airline Guides, Inc. v. Goss,*

    6 F.3d 1385 (9th Cir. 1993) ...................................................................... 18

*Opticians Ass'n of Am. v. Independent Opticians of Am.,*

    920 F.2d 187 (3d Cir. 1990) .............................................................. 14, 24

*Opticians Co. v. Warner Commc'ns, Inc.,*

    675 F.2d 852 (7th Cir. 1982) .................................................................... 22

*Paramount Pictures v. Dorney Park Coaster Co.,*

    698 F. Supp. 1274 (E.D. Pa. 1988) .......................................................... 25

*Perfumebay.com Inc. v. EBAY, Inc.,*

    506 F.3d 1165 (9th Cir. 2007) .................................................................. 14

*Playboy Enters., Inc. v. Netscape Commc'ns Corp.,*

    354 F.3d 1020 (9th Cir. 2004) .................................................................. 20

*Pom Wonderful LLC v. Hubbard,*

    775 F.3d 1118 (9th Cir. 2014) .................................................................. 12

*S & R Corp. v. Jiffy Lube Intern., Inc.,*

    968 F.2d 371 (3d Cir. 1992) ..................................................................... 14

*Schmidt v. Quigg,*

    609 F. Supp. 227 (D.C. Mich. 1985) ........................................................ 17

*Shakopee Mdewakanton Sioux Community v. FBCV, LLC,*

    2011 WL 4527177 (D. Nev., Sept. 26, 2011) .................................... 18, 19

*Sierra On-Line v. Phoenix Software, Inc.,*

    739 F.2d 1415 (9th Cir. 1984) .................................................................. 17

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

v

*SK & F, Co. v. Premo Pharm. Labs.*,
   625 F.2d 1055 (3d Cir. 1980) ...................................................................25

*Stork Restaurant, Inc. v. Sahati*,
   166 F.2d 348 (9th Cir. 1948) ....................................................................22

*SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*,
   846 F.Supp.2d 1063 (N.D. Cal. 2012) .....................................................15

*The Crab Cooker v. Specialty Rests. Corp.*,
   223 U.S.P.Q. 233 (C.D. Cal. 1983) ..........................................................19

*The Money Store v. HarrisCorp Fin., Inc.*,
   689 F.2d 666 (7th Cir. 1982) ....................................................................16

*Transgo, Inc. v. AJAC Transmission Parts Corp.*,
   768 F.2d 1001 (9th Cir. 1985) ..................................................................17

*Watts Health Sys., Inc. v. United Health Care Corp.*,
   960 F. Supp. 1431 (C.D. Cal. 1996) .........................................................25

*Williams v. Wells Fargo Bank*, N.A.,
   Case No. CV 10-4761 PA (PJWx), 2010 U.S. Dist. LEXIS 91158 (N.D. Cal. Aug.
   9, 2010) .....................................................................................................21

*Winter v. Natural Res. Def. Fund*,
   555 U.S. 7 (2008) .....................................................................................11

*Zobmondo Entm't LLC v. Falls Media, LLC*,
   602 F.3d 1108 (9th Cir. 2010) ..................................................................16

**Statutes**

15 U.S.C. § 1057(b) ........................................................................................12

15 U.S.C. § 1115(a) ........................................................................................12

15 U.S.C. § 1115(b) ........................................................................................12

15 U.S.C. § 1125(a)(1)(A) ..............................................................................21

Cal. Bus. & Prof. Code § 17200 .....................................................................21

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1159255.3          *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER

**Other Authorities**

1 Gilson, *Trademark Protection & Practice*, § 2.09[1] ............................................ 17

2 McCarthy, Trademarks and Unfair Competition, § 23:3 ........................................ 14

*EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

## I.   **INTRODUCTION**

Plaintiff Isle of Capri has spent decades building up a valuable multimillion dollar brand under the marks LADY LUCK® and LUCKY LADY®, which it uses to promote its high quality and reputable casino services and online casino gaming services and related goods and services.

In order to preserve its rights under those marks, Isle of Capri polices the use of its marks.  A couple of years ago, Isle of Capri identified an intent-to-use application Serial No. 86427075, filed by a company related to Defendants, with the U.S. Patent and Trademark Office ("USPTO") to register the LARRY FLYNT'S LUCKY LADY CASINO name for casinos.  After Isle of Capri exchanged correspondence with counsel for the applicant and alerted the applicant to its rights in the marks, the applicant formally abandoned the application.  Isle of Capri assumed that was the end of the issue.

Just a couple weeks ago, the name Larry Flynt's Lucky Lady Casino resurfaced when Defendants opened a new casino in Gardena, California, using Isle of Capri's marks in connection with casino services and related goods and services. Isle of Capri again reached out to Flynt's counsel to demand that Defendants cease their infringing use its marks.  Just days ago, however, counsel for Defendants responded that they would not stop using the marks, prompting this Application.

Understandably, Isle of Capri is extremely concerned that this unauthorized use of its marks is causing irreparable injury by depriving Plaintiff of its right to use and control the use of its LUCKY LADY® and LADY LUCK® marks; (b) creating a likelihood of confusion, mistake and deception among consumers and the trade as to the source of the casino services and related services and goods sold under the infringing "LUCKY LADY" name; (c) falsely causing the public to associate Plaintiff with Flynt and/or its products and services, or vice versa; (d) causing harm to Plaintiff's goodwill and diluting the capacity of its LUCKY LADY® and LADY LUCK® marks to differentiate Plaintiff's services from others; and (e) causing

1

Plaintiff to lose sales.  Additionally, the lewd and suggestive nature of the Defendants' ongoing use of Plaintiff's marks and the perceived association with Defendants' strip clubs and pornographic publications threatens immediate and irreparable injury to Plaintiff's reputation and goodwill.

Accordingly, Plaintiff seeks a temporary restraining order against Defendants, and all those in active concert or participation, prohibiting them from using the marks LUCKY LADY® or LADY LUCK®, or any formative thereof, or any confusingly similar mark, in connection with any casino services, online gaming services, slot machine games, gaming equipment, playing cards, clothing, merchandise, restaurant services, hotel services, bar services, or any other goods or services related to casino services or online casino gaming services.

## II. **STATEMENT OF FACTS**

### A. **Plaintiff Isle of Capri**

For many decades, Isle of Capri has been well known by the general consuming public as a leader in the casino and gaming industry.  (Declaration of Andrew Blinn ("Blinn Dec."), ¶ 3.)  It is one of the top ten largest publicly held gaming companies in the United States.  (*Id.*)  It owns and operates riverboat, dockside, and land-based casinos at fifteen locations across the United States in Colorado, Pennsylvania, Iowa, Louisiana, Missouri, Mississippi, and Florida, including casinos operated under the LADY LUCK® name.  (*Id.*, ¶ 3.)  Some of its properties also offer hotel services.  (*Id.*)  Its casinos, hotels, bars, and restaurants attract approximately fifteen million visitors per year.  (*Id.*, ¶ 5.)  In fiscal year 2015, Isle of Capri had gross revenues of $1.2 billion as a result of approximately 1.5 million unique annual guests (17.9 million non-unique guest trips), and had approximately 7,000 employees.  (*Id.*, ¶ 6.)  Its Lady Luck properties accounted for $193 million in gross revenue, 300,000 estimated unique annual guests, 3.1 million non-unique guest trips, and approximately 1,200 employees.  (*Id.*)  In fiscal year 2016, Isle of Capri had gross revenues of $1.2 billion as a result of approximately

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1.5 million unique annual guests (17.4 million non-unique guest trips), and approximately 7,000 employees. (*Id*., ¶ 7.) Its Lady Luck properties accounted for $195 million in gross revenue, 300,000 estimated unique annual guests, 3.1 million non-unique guest trips, and approximately 1,200 employees. (*Id*.) Isle of Capri has customers in all 50 states, including in California. (*Id*., ¶ 10.)

Isle of Capri also provides online casino gaming services throughout the United States under its LADY LUCK® trademark at https://play.LADYLUCK.com. (*Id*., ¶ 9.) Isle of Capri also provides online retail shopping services throughout the United States under its LADY LUCK® trademark at https://shop.LADYLUCK.com. (*Id*., ¶ 11.)

Among other media, Isle of Capri promotes its high quality and reputable casino services, online casino gaming services, online retail shopping services and retail items through display and use of its LADY LUCK® trademark in the operation of its website www. LADYLUCK.com, television and print advertising, email, direct mail, Twitter and Facebook accounts, signage, point of purchase displays, uniforms worn by casino, hotel and restaurant staff, through its Fan Club loyalty program and through word of mouth. (*Id*., ¶ 12.) Isle of Capri also owns the 1-888-LADYLUCK toll free telephone number to promote its services. (*Id*.) In 2015, its website received approximately 2.8 million unique users and over 10 million pageviews, with an average of 230,000 unique users and 880,000 pageviews each month. (*Id*., ¶ 13.) The numbers for 2016 are shaping up to surpass that. (*Id*.)

## B. Plaintiff's LADY LUCK® and LUCKY LADY® Marks

Isle of Capri owns numerous federal trademark registrations for LADY LUCK® and LUCKY LADY®. (*Id*., ¶ 16 and Exs. 3-5.) Isle of Capri uses those marks on, among other goods and services, casino services, online social casino gaming services, playing cards, slot machines and related services, dice, clothing, merchandise, restaurant services, hotel services, and bar services. (*Id*.) The marks have become synonymous with the high-quality, casino-related goods and services

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

that Isle of Capri provides to millions of guests and customers.  (*Id*.)

At least as early as 1968, Isle of Capri's predecessor in interest adopted and began using the LADY LUCK® trademark for casino services.  (*Id*., ¶ 17.)  Isle of Capri also registered its LADYLUCK.com domain name to promote its LADY LUCK® and LUCKY LADY® trademarks for casino services and related goods and services.  (*Id*., ¶¶ 18-21 and Exs. 1-2.)  As illustrated on Isle of Capri's LADYLUCK.com website below, the LADY LUCK® trademark has been used since 1968.  (*Id*., ¶ 19 and Ex. 1.)



At least as early as 1988, Isle of Capri's predecessor in interest adopted and began using the LUCKY LADY® trademark for entertainment services, namely, slot machine games in interstate commerce.  (*Id*., ¶ 20 and Ex. 2.)

Isle of Capri owns all rights, title, and interest in its LADY LUCK® and LUCKY LADY® trademarks and service marks, which cover a vast array of goods and services classes, including the following:

| Mark | Reg. # | Status | Class | Goods and Services (First Use In Commerce) |
|---|---|---|---|---|
| **LADY LUCK®** | 1165866 | Registered 8/18/1981 Active | 41/42 | Casino services  (6/11/1968); Restaurant services. (6/11/1968) |
| **LUCKY LADY®** | 1528853 | Registered 3/7/1989 Active | 41 | Entertainment services, namely slot machine games. (5/16/1988) |
| **LADY LUCK®** | 1530253 | Registered 3/14/1989 Active | 42 | Hotel services. (5/24/1983) |
| **LADY LUCK®** | 1650606 | Registered 7/16/1991 Active | 21/25 | Clothing, namely, caps, visors, sweatshirts, jackets, tee shirts, and golf shirts  (8/1984);  Drinking glasses, mugs, corkscrews, and bottle openers. |

4

| | | | | (11/1986) |
|---|---|---|---|---|
| **LADY LUCK®** | 1613796 | Registered 9/18/1990 Active | 16/18 20/34 | Playing cards, pens, magnetic phone indexes and office travel kits consisting of rulers, scissors, tape, calculators, and the like (11/1986); Canvas boat bags (8/1988); Stadium cushions and plastic key rings (4/1989); Cigarette lighters. (8/1987) |
| **LADY LUCK®** | 1847065 | Registered 7/26/1994 Active | 42 | Bar services. (6/11/1968) |
| **LADY LUCK®** | 2238666 | Registered 4/13/1999 Active | 28 | Gaming equipment, namely game tables, game wheels, dice, and game chips. (4/1973) |

(*Id.*, ¶ 22.)

Each of Isle of Capri's foregoing LADY LUCK® and LUCKY LADY® trademarks and service marks is valid, subsisting, and in full force and effect.  (*Id.*, ¶¶ 23, 25 and Exs. 3-5.)   Additionally, each of the registrations has become incontestable within the meaning of 15 U.S.C. §§ 1065 and 1115(b).  (*Id.*, ¶ 24.)

Additionally, to reflect the natural expansion of the products and services Isle of Capri offers under its LADY LUCK® mark, Isle of Capri has filed with the USPTO numerous additional applications that are presently pending, including:

| Mark | App. # | Status | Class | Goods and Services (First Use In Commerce) |
|---|---|---|---|---|
| **LADY LUCK** | 86140861 (ITU App.) | Filed 12/11/2013 Active | 09/41 | Downloadable electronic game programs; Entertainment services, namely, providing temporary use of non-downloadable electronic game programs. |
| **LADY LUCK** | 86563234 (ITU App.) | Filed 3/13/2015 | 30 | Barbecue sauce; Hot sauce |
| **LADY LUCK** | 86563232 (ITU App.) | Filed 3/13/2015 | 28 | Bobblehead dolls; Golf ball markers; Golf balls; Head covers for golf clubs. |
| **LADY LUCK** | 86563229 (ITU App.) | Filed 3/13/2015 | 26 | Belt buckles. |
| **LADY LUCK** | 86563223 (ITU App.) | Filed 3/13/2015 | 25 | Aprons; Belts for clothing; Boxer shorts; Camp shirts; Fleece pullovers; Hooded sweatshirts; Leather jackets; Polo shirts; Scarves; Socks. |
| **LADY LUCK** | 86563221 (ITU App.) | Filed 3/13/2015 | 24 | Blankets for outdoor use. |

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

5

| **LADY LUCK** | 86563209 (ITU App.) | Filed 3/13/2015 | 21 | Beverage stirrers; Bottle stoppers specially adapted for use with wine bottles; Coasters, not of paper and other than table linen; Cocktail shakers; Household utensils, namely, strainers |
|---|---|---|---|---|
| **LADY LUCK** | 86563178 (ITU App.) | Filed 3/13/2015 | 18 | Handbags; Leather and imitation leather bags; Luggage; Wallets made of leather or other materials. |
| **LADY LUCK** | 86563162 (ITU App.) | Filed 3/13/2015 | 16 | Coasters of cardboard; Giclee prints. |
| **LADY LUCK** | 86563152 (ITU App.) | Filed 3/13/2015 | 14 | Bracelets; Charms; Clocks; Cloisonne pins; Cuff links; Earrings; Necklaces; Rings; Watches |
| **LADY LUCK** | 86563150 (ITU App.) | Filed 3/13/2015 | 9 | Audio Speakers; Blank USB flash drives; Cell phone battery chargers; Cell phone cases. |

(*Id.*, ¶ 26.)

Isle of Capri, either directly or through extensive use by its predecessor in interest, has also acquired significant common law rights in the LADY LUCK® and LUCKY LADY® marks for use with myriad goods and services it has offered. (*Id.*, ¶ 27.)

As a result of Isle of Capri's extensive promotion of the LADY LUCK® and LUCKY LADY® marks, as well as Isle of Capri's extensive sales of goods and services in connection with those marks, they are well known among the general consuming public. (*Id.*, ¶ 28.) In the past 2 years alone, Isle of Capri has spent significant dollars, time and resources in advertising, marketing, and otherwise promoting goods and services in the United States in connection with the marks, including over $6 million in direct mail, over $10 million in television advertising, $3.5 million in radio advertising, over $1 million in print advertising, and $5.7 million in promotional expenditures. (*Id.*, ¶ 29.) Each year Isle of Capri sends out almost 20 million mailings (over 40 million over the last 2 years) to customers and potential customers nationwide. (*Id.*)

Isle of Capri has also expended significant effort and resources in policing the attempted use of infringing marks by unauthorized third parties. (*Id.*, ¶ 30.) For

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

example, in addition to attempting to curtail Flynt's infringement of the LUCKY LADY® and LADY LUCK® marks, Isle of Capri recently learned of another infringer in San Diego similarly using the identical LUCKY LADY mark in connection with casino services and that this infringer was recently the target of an FBI raid. (*Id*.) Accordingly, Isle of Capri's counsel sent a letter dated August 9, 2016, demanding that the San Diego casino operator cease and desist from all use of the LUCKY LADY name in connection with any goods or services related to casinos. (*Id*., ¶ 30 and Ex. 6.)

### C.   Flynt's Infringing Use of the Marks

In October, 2014, approximately 47 years after Isle of Capri's predecessor in interest began using the LADY LUCK mark, and approximately 26 years after it began using the LUCKY LADY mark, a company called LFP IP, LLC (believed to be a trademark holding company controlled by Flynt) filed an intent-to-use application Serial No. 86427075 to register the LARRY FLYNT'S LUCKY LADY CASINO name for casinos. (*Id*., ¶ 31; Declaration of Robert G. Lancaster ("Lancaster Dec."), ¶ 2-3 and Ex. 1.)

Immediately upon finding out about Flynt's filing of the intent-to-use application to register the LUCKY LADY name, Isle of Capri sent Flynt's counsel a letter apprising him of Isle of Capri's longstanding rights in the LADY LUCK and LUCKY LADY marks, and demanding that Flynt abandon the application to register LARRY FLYNT'S LUCKY LADY CASINO and abandon any plans to use this name for a casino. (Blinn Dec., ¶ 32 and Ex. 7.)

LFP IP acknowledged and acquiesced to Isle of Capri's longstanding trademark rights and, on May 12, 2015, filed with the USPTO an express abandonment of its application. (Lancaster Dec., ¶ 4 and Ex. 2.) On May 14, 2015, the USPTO issued a notice of the express abandonment. (Lancaster Dec., ¶ 5.)

On or about July 29, 2016, despite having full knowledge of Isle of Capri's trademark rights and despite having expressly abandoned the application to register

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

7

LARRY FLYNT'S LUCKY LADY CASINO, Flynt began using the infringing LUCKY LADY name for a newly-opened casino in Gardena, California, without authorization from Isle of Capri.  (Blinn Dec., ¶ 33; Declaration of Mary P. Hogan ("Hogan Dec."), ¶ 4-6 and Ex. 1-3)  Records of the California Gambling Control Commission indicate that each Defendant is licensed as an Owner of Larry Flynt's Lucky Lady Casino.  (Lancaster Dec., ¶ 6 and Ex. 3.)

As shown below on Flynt's casino tables and LinkedIn site, its infringing use of Isle of Capri's LUCKY LADY® trademark is identical to the registration and substantially identical to the its LADY LUCK® mark:





(Lancaster Dec., ¶¶ 7-8 and Exs. 4-5.)

The services identified in the previously abandoned application and indicated by Flynt's recent actions in opening the new casino are identical or confusingly similar to the services performed by Isle of Capri under its marks.

On August 1, 2016, upon learning of Flynt's opening of the LUCKY LADY casino in Gardena, Isle of Capri's counsel again sent Flynt a letter reminding them of Isle of Capri's longstanding rights in the LADY LUCK® and LUCKY LADY® marks, and demanding that they cease all use of the infringing LUCKY LADY name in connection with any goods or services related to casinos.  (Blinn Dec., ¶ 35 and Ex. 8.)

Despite the demand by Isle of Capri to discontinue all use of Isle of Capri's LUCKY LADY® mark, on August 9, 2016, Flynt's counsel informed Isle of Capri

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

that Flynt was refusing to discontinue its use of the name LUCKY LADY for casino services and related goods and services, and stated that Flynt "may pursue an application in the future."  (*Id.*, ¶ 36 and Ex. 8.)

Flynt's ongoing and intentional efforts to encroach upon Isle of Capri's intellectual property rights is likely to cause confusion with and disparage Isle of Capri's use of both of its LADY LUCK® and LUCKY LADY® trademarks for casino services and related goods and services, and to damage Isle of Capri's well-established rights and goodwill in those marks.  (*Id.*, ¶ 37.)

### D.    The Irreparable Harm to Isle of Capri

Flynt is the founder of Hustler magazine, described in Wikipedia as "a monthly pornographic magazine published in the United States."  Wikipedia, Hustler, https://en.wipiedia.org/wiki/Hustler (last visited Aug. 4, 2016).  (Lancaster Dec., ¶ 9 and Ex. 6; Blinn Dec., ¶38.) On information and belief, Flynt also operates "Hustler Club" strip clubs in locations such as nearby Las Vegas.  (Lancaster Dec., ¶ 10 and Ex. 7)  Flynt also operates another nearby casino in Gardena known as "Hustler Casino."

Flynt's LUCKY LADY casino in Gardena likewise has an adult theme.  As illustrated below, large outdoor signage (until renovations recently began) depicted a scantily clad woman with her legs draped across the "Y" in LUCKY. (Blinn Dec., ¶ 39; Hogan Dec., ¶¶ 7-8 and Ex. 4.)



BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

9

Some members of the Gardena City Council have objected to the lewd character of the sign.  Additionally, the gaming chips at Flynt's casino flaunt a photo of a naked woman crouching suggestively under the LUCKY LADY mark.  (Hogan Dec., ¶ 5 and Ex. 2.)



The goods and services offered at Flynt's LUCKY LADY casino are identical or closely related to the goods and services offered by Isle of Capri under LADY LUCK® and LUCKY LADY® marks.  (Blinn Dec., ¶ 40.)  Flynt's LUCKY LADY name is also highly similar to Isle of Capri's marks in sight, sound, and commercial impression.  (*Id.*, ¶ 41.)  The similarity between Flynt's LUCKY LADY name and Isle of Capri's marks is likely to cause confusion of source among consumers.  (*Id.*, ¶ 43.)  Additionally, the lewd and suggestive nature of Flynt's use of the mark and the perceived association with Flynt's strip clubs and publications will cause irreparable harm to Isle of Capri.  (*Id.*, ¶ 47.)

Isle of Capri has suffered and will continue to suffer damage to its business, reputation and goodwill, as well as the loss of sales and profits Isle of Capri would have realized but for Flynt's acts.  (*Id.*, ¶¶ 37, 45.)  Unless restrained and enjoined, Flynt will continue to infringe Isle of Capri's rights in the LADY LUCK® and LUCKY LADY® and continue to cause irreparable injury to Isle of Capri by: (1) depriving Isle of Capri of its right to use and control the use of its LADY LUCK® and LUCKY LADY® marks; (2) creating a likelihood of confusion, mistake and deception among consumers and the trade as to the source of the casino services and related services and goods sold under the infringing "LUCKY LADY" name; (3) falsely causing the public to associate Isle of Capri with Flynt and/or its products

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  and services, or vice versa; (4) causing harm to Isle of Capri's goodwill and diluting
2  the capacity of its LADY LUCK® and LUCKY LADY® to differentiate Isle of
3  Capri's products and services from others; and (5) causing Isle of Capri to lose
4  sales.  (*Id*., ¶ 46.)  Isle of Capri's remedy at law is not adequate to compensate Isle
5  of Capri for all of the injuries resulting from Flynt's actions.  (*Id*., ¶¶ 48-53.)

6  ## III.   LEGAL ARGUMENT

7  ### A.   The Standard for Obtaining a Temporary Restraining Order

8  Rule 65(b) of the Federal Rules of Civil Procedure authorizes the Court to
9  enter a provisional remedy of this type if the plaintiff is threatened with immediate
10  and irreparable injury before the matter can be heard on the usual notice.  "The
11  standard for issuing a [temporary restraining order] is similar to the standard for
12  issuing a preliminary injunction."  *Garrett v. City of Escondido*, 465 F. Supp. 2d
13  1043, 1049 (S.D. Cal. 2006).  A party seeking a temporary restraining order "must
14  establish that he is likely to succeed on the merits, that he is likely to suffer
15  irreparable harm in the absence of preliminary relief, that the balance of equities tips
16  in his favor, and that an injunction is in the public interest."  *Winter v. Natural Res.*
17  *Def. Fund*, 555 U.S. 7, 20 (2008).

18  If there are multiple claims in a complaint, "the court need only determine
19  that plaintiff has demonstrated a likelihood of success on one claim that would
20  entitle it to a permanent injunction . . . ."  *Cal. Hosp. Ass'n v. Maxwell-Jolly*, 2011
21  U.S. Dist. LEXIS 10523, at *3 (E.D. Cal. Jan. 28, 2011).[1]

22  ### B.   Plaintiff Will Succeed on the Merits of Its Infringement Claims

23  This is a classic case of trademark infringement.  "To prevail on [a] trademark
24  infringement claim, [a plaintiff] must show that: (1) it has a valid, protectable
25  trademark, and (2) that [defendant's] use of the mark is likely to cause confusion."

26
27
28

---

[1] If a party shows a likelihood of irreparable injury and that the injunction is in the public interest," it may obtain a temporary restraining order on the lesser showing of "serious questions going to the merits and a hardship balance that tips sharply towards the plaintiff."  *Cal. Med. Ass'n v. Douglas*, Case No. CV 11-9688 CAS (MANx), 2012 U.S. Dist. LEXIS 12074, at *8 (C.D. Cal. Jan. 31, 2012).  Plaintiff here does not need to resort to this less restrictive standard.

11

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007).

2       As explained below, Isle of Capri will likely prevail on both its trademark

3 infringement claim under 15 U.S.C. section 1114 because it can establish that:  (1)

4 Isle of Capri has valid, protectable marks in LADY LUCK® and LUCKY LADY®;

5 and (2) Flynt's use of the "LUCKY LADY" mark in connection with the operation

6 of Larry Flynt's Lucky Lady Casino is confusing.

7                **1.**      **Plaintiff Has Valid and Protectable Marks**

8       A plaintiff can establish that it has a valid, protectable trademark by showing

9 that it has a "federally registered mark in goods or services." *Applied Info. Scis.*

10 *Corp.*, 511 F.3d at 969-70.  Registration of a mark "shall be prima facie evidence of

11 the validity of the registered mark and of the registration of the mark, of the

12 registrant's ownership of the mark, and of the registrant's exclusive right to use the

13 registered mark in commerce on or in connection with the goods or services

14 specified in the certificate . . . ."  15 U.S.C. §1057(b); *see also* 15 U.S.C. §1115(a).

15       "Registration of a mark is prima facie evidence of the validity of the mark, the

16 registrant's ownership of the mark, and the registrant's exclusive right to use the

17 mark in connection with the goods specified in the registration." *Pom Wonderful*

18 *LLC v. Hubbard,* 775 F.3d 1118, 1124 (9th Cir. 2014).  Further, Isle of Capri's

19 marks have been acknowledged as incontestable under 15 U.S.C. § 1115(b).  (Blinn

20 Dec., ¶ 24.)  The effect of incontestable status under the Lanham Act is that the

21 registration goes beyond prima facie evidence to become "conclusive evidence" of

22 the ownership, validity, and exclusive right to use the mark.  See, 15 U.S.C. §

23 1115(b).   The registrations are also constructive notice of the registrant's claim of

24 ownership of the mark under 15 U.S.C. § 1072.

25       Here, Isle of Capri's LADY LUCK® and LUCKY LADY® marks were

26 registered on the principal register, as summarized in the chart in Section II.B above.

27 (Blinn Dec., ¶ 22-23 and Exs. 3, 5.)  Isle of Capri received valid assignments from

28 its predecessor in interest, the owner listed on the registration certificates for the

marks. (*Id.*, ¶ 25 and Ex. 4.)

Under 15 U.S.C. § 1057(b), the marks' registered status gives Isle of Capri the exclusive right to use the marks in commerce on or in connection with the specified goods or services. Isle of Capri's rights to its LADY LUCK® and LUCKY LADY® marks are superior to Flynt's rights in the LUCKY LADY name by virtue of Isle of Capri's prior registrations and longstanding use of its marks in interstate commerce within the United States. Because the registrations provide conclusive evidence that the Isle of Capri has a protectable ownership interest in the marks and the exclusive right to use the marks, Isle of Capri has satisfied the first element of its trademark infringement claim.

### 2. Flynt's Use of the "Lucky Lady" Name for Their Casino Is Likely to Confuse Consumers

The following eight factors, generally referred to as the *Sleekcraft* factors, guide the inquiry into whether a defendant's use of a mark is likely to confuse consumers: (1) the similarity of the marks; (2) the strength of the plaintiff's mark; (3) the proximity or relatedness of the goods or services; (4) the defendant's intent in selecting the mark; (5) evidence of actual confusion; (6) the marketing channels used; (7) the likelihood of expansion into other markets; and (8) the degree of care likely to be exercised by purchasers of the defendant's product. *See Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1030 (9th Cir. 2010). "This eight-factor analysis is pliant, illustrative rather than exhaustive, and best understood as simply providing helpful guideposts." *Id.* "Some factors are much more important than others, and the relative importance of each individual factor will be case-specific." *Id.* at 1031. A plaintiff need not show that all of the factors weigh in its favor in order to prevail. *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141 (9th Cir. 2002). "[I]t is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the factors." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th Cir.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

13

1999).  Here, the *Sleekcraft* factors strongly establish that Flynt's use of the "LUCKY LADY" name for their casino is likely to cause confusion.

a.   <u>Similarity of the Marks.</u>

"Obviously, the greater the similarity between the two marks at issue, the greater the likelihood of confusion."  *GoTo.com, Inc. v. Walt Disney Co*., 202 F.3d 1199, 1206 (9th Cir. 2000).  Courts, in interpreting federal trademark law, have repeatedly held that "'there is a great likelihood of confusion when the infringer uses the exact trademark' as the plaintiff."  *S & R Corp. v. Jiffy Lube Intern., Inc.*, 968 F.2d 371, 375 (3d Cir. 1992).  In these cases, "[the] likelihood of confusion is inevitable."  *Opticians Ass'n of Am. v. Independent Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990).  "Cases where a defendant uses an identical mark on competitive goods hardly ever find their way into the appellate reports.  Such cases are 'open and shut' and do not involve protracted litigation to determine liability for trademark infringement."  *Id.*  "[L]ess similarity between the marks will suffice when the goods are complementary, … the products are sold to the same class of purchasers, ... or the goods are similar in use and function."  *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 341 (9th Cir. 1979); *see, e.g., Perfumebay.com Inc. v. EBAY, Inc.*, 506 F.3d 1165, 1174 (9th Cir. 2007) ("PerfumeBay" confusingly similar to "eBay" mark); *Brookfield*, 174 F.3d at 1055 ("moviebuff.com" was essentially the same as "moviebuffonline.com" and likely to confuse the public).

Here, Defendants are using the entirety of Plaintiff's LUCKY LADY® mark on competitive goods and services.  The marks are identical.  In addition, Defendants' LUCKY LADY mark, while not identical to Plaintiff's LADY LUCK® mark, is so close in sound, appearance, and meaning as to lead inevitably to confusion.  This factor suggests a strong potential for confusion.

The addition of the possessive name "Larry Flynt's" before the mark does not change the fact that Defendants have wholesale appropriated Isle of Capri's LUCKY LADY® mark.  Flynt's personal name is not the dominant portion of

14

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

Defendants' LUCKY LADY mark, and it is used in a smaller font.  As shown above on Flynt's casino tables, chips and  LinkedIn site, third party uses such as news articles also drop Flynt's name altogether, referring to the new venue as the Lucky Lady casino.  Rather than eliminating confusion, adding Flynt's name will lead consumers to assume there is some affiliation between the parties.  The ineffectiveness of the inclusion of a personal name to eliminate confusion was recognized long ago by the *Supreme Court in Menendez v. Holt*, 128 U.S. 514, 521 (1888), where the Court stated:  "[I]t is no answer to their action to say that there was no invasion of that [trademark] right because the name of S. O. Ryder accompanied the brand upon flour sold by appellants, instead of the name of Holt & Co. That is an aggravation, and not a justification, for it is openly trading in the name of another upon the reputation acquired by the device of the true proprietor."

b.    Strength of the Mark.

Isle of Capri's LADY LUCK® and LUCKY LADY® marks are strong. "'The strength of the trademark is evaluated in terms of its conceptual strength and commercial strength.'"  *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd*., 846 F.Supp.2d 1063, 1078 (N.D. Cal. 2012).  "In terms of conceptual strength, '[m]arks are often classified in one of five categories of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful.'"  *Id.*

> *Generic marks* give the general name of the product; they embrace an entire class of products.  *Descriptive marks* define qualities or characteristics of a product in a straightforward way that requires no exercise of the imagination to be understood.  Thus, 'Honey Baked Ham' is a descriptive term for a ham that has been baked with honey. . . . If a consumer must use imagination or any type of multistage reasoning to understand the mark's significance, then the mark does not *describe* the product's features, but *suggests* them. . . . Examples of *suggestive marks* include 'Air Care' for a service that maintains

medical equipment used for administering oxygen and 'Anti-Washboard' for a soap that makes scrubbing unnecessary when washing clothes. *Arbitrary marks* have no relevance to any feature or characteristic of a product. *Fanciful marks* are the most distinctive marks of all; they involve a high degree of imagination."

*Kendall-Jackson Winery, Ltd. v. E & J. Gallo Winery*, 150 F.3d 1042, 1049 n.8 (9th Cir. 1998).

A suggestive mark is one for which "a consumer must use imagination or any type of multistage reasoning to understand the mark's significance . . . the mark does not describe the product's features, but suggests them." *Zobmondo Entm't LLC v. Falls Media, LLC*, 602 F.3d 1108, 1114 (9th Cir. 2010). The primary criterion for evaluating whether a mark is suggestive is whether it "requires a mental leap from the mark to the product." *Fortune Dynamic,* 618 F.3d at 1033.

The LADY LUCK® and LUCKY LADY® marks are, at least, suggestive because their meaning is not inherently obvious—they do not identify the precise nature of the services being offered by Isle of Capri. *See, e.g., The Money Store v. HarrisCorp Fin., Inc.,* 689 F.2d 666, 668-69, 674 (7th Cir. 1982) (finding THE MONEY STORE is suggestive rather than descriptive where "[s]ome imagination and perception are . . . required to identify the precise nature of the services offered by the plaintiff"). Suggestive marks are protected without proof of secondary meaning. *Sleekcraft*, 599 F.2d at 349.

Even if the Court were to determine that Plaintiff's LADY LUCK® and LUCKY LADY® marks are descriptive, the marks would still be protectable because they have acquired secondary meaning. *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1197 (9th Cir. 2009). Many descriptive marks have been found protectable. *See, e.g.*, *Schmidt v. Quigg*, 609 F. Supp. 227, 231 (D.C. Mich. 1985) (HONEY BAKED HAM); *Fin. Exp. LLC v. Nowcom Corp.*, 564 F. Supp. 2d 1160, 1170 (C.D. Cal. 2008) (FINANCE EXPRESS). Secondary meaning is established when

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

16

"the primary significance of the term in the minds of the consuming public is not the product but the producer." *Transgo, Inc. v. AJAC Transmission Parts Corp.*, 768 F.2d 1001, 1015 (9th Cir. 1985).

Courts consider a variety of factors to assess secondary meaning, including (1) whether actual consumers of the service bearing the claimed trademark associate the trademark with the producer; (2) the amount, nature, and geographical scope of advertising under the claimed trademark; (3) the length and manner of its use; and (4) whether its use has been exclusive. *Transgo*, 768 F.2d at 1015.

Here, the association the LADY LUCK® and LUCKY LADY® marks with Isle of Capri's casino-related services has permeated the market for approximately 49 years and 28 years, respectively.  (Blinn Dec., ¶¶ 17-23.)  Isle of Capri has devoted substantial resources educating consumers about its brand of casino-related goods and services.  (*Id*., ¶¶ 28-29.)  It has advertised the marks extensively and its millions of customers have witnessed its services being offered in connection with its marks.  (*Id*., ¶¶ 6-15, 29.)  Moreover, Isle of Capri need only show there is a fair chance that it can prove secondary meaning to obtain a preliminary injunction.  *See Sierra On-Line v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422-23 (9th Cir. 1984).  Isle of Capri's proof well exceeds this low threshold.

### c.   Relatedness of the Goods and Services.

There is no question as to the relatedness of the Plaintiff's goods and services and Defendants' goods and services, as they are identical.  Both Plaintiff and Defendants are using the marks in connection with casinos and casino-related goods and services.  "[T]he same customer willing to spend discretionary income gambling at one location may easily spend at another."  *Shakopee Mdewakanton Sioux Community v. FBCV, LLC*, 2011 WL 4527177, at *3 (D. Nev., Sept. 26, 2011).

### d.   Evidence of Actual Confusion.

Although Plaintiff is not presently aware of any evidence of actual confusion, this is likely due only to the fact that Defendants have just recently begun operating

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

their LUCKY LADY casino on July 29, 2016.  (Blinn Dec., ¶ 44.)  If Plaintiff is required to wait for relief until it is able to establish that actual confusion has already begun to occur in the marketplace, it will be too late and it will have already suffered irreparable harm.  (*Id*.)

Evidence of actual confusion is "strong support for the likelihood of confusion."  *Network Automation,* 638 F.3d at 1151.  But actual confusion "is not necessary to a finding of likelihood of confusion under the Lanham Act."  *Id*. *See also*, *GoTo.com*, 202 F.3d at 1208; *Sleekcraft*, 599 F.2d at 352.

e.   Defendants' Intent.

"When an alleged infringer knowingly adopts a mark similar to another's, courts will presume an intent to deceive the public."  *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993).

Defendants' intent in selecting the mark is not yet known to Plaintiff (Blinn Dec., ¶ 34), however, registration of a mark is constructive notice of ownership of the mark under 15 U.S.C. § 1072.  Because Plaintiff's marks are registered, Defendants were at least on constructive notice that the mark was owned by another party prior to their adoption of the mark.  Further, Defendants had actual notice of Plaintiff's LADY LUCK® and LUCKY LADY® trademarks from the letter sent to their counsel in November, 2014 after their intent to use application was filed.  (*Id*., ¶ 32 and Ex. 7.)  Actual notice was provided again in the August 1, 2016 letter sent to their counsel, only days after they began using the mark in a newly-opened casino.  (*Id*., ¶ 35 and Ex. 8.)  Nevertheless, Defendants have deliberately chosen continue their infringing use of the "LUCKY LADY" name, rather than to voluntarily operate under a different name.  (*Id*., ¶ 36 and Ex. 9.)

Isle of Capri's rights to its LADY LUCK® and LUCKY LADY® marks are superior to Flynt's rights in the LUCKY LADY name by virtue of Isle of Capri's prior registrations and longstanding use of its marks in interstate commerce within the United States.  Congress has afforded "nationwide protection to registered

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

marks, regardless of the areas in which the registrant actually uses the mark." *Dawn Donut co. v. Hart's Food Stores, Inc*., 267 F.2d 358, 362 (2d Cir.1959).  It is no defense that the goods and services were offered to consumers in a distinct and separate geographical markets where, as here, the junior user had knowledge of the senior user's rights prior to commencing use of the same mark for the same services. *See The Crab Cooker v. Specialty Rests. Corp*., 223 U.S.P.Q. 233, 235 (C.D. Cal. 1983); *Johanna Farms, Inc. v. Citrus  Bowl, Inc*., 468 F. Supp. 866, 876 (E.D.N.Y. 1978); *Shakopee Mdewakanton Sioux Community*, 2011 WL 4527177, at *5.

f.   <u>Marketing Channels.</u>

The marketing channels used for Plaintiff's goods and services and Defendants' goods and services are identical and overlapping.  Both Plaintiff and Defendants market their competing casino-related goods and services with signage, social media sites, and through word of mouth, and if they are not already, Defendants are likely to use television and print advertising, websites, social media, point of purchase displays, and uniforms worn by casino staff in the same way that Plaintiff does.  (Blinn Dec., ¶ 42 and Exs. 1-2; Hogan Dec., ¶¶ 4, 6 and Exs. 1, 3.) The current overlapping nature of their competing web presence is enough to demonstrate a likelihood of confusion.  *See, e.g., Brookfield*, 174 F.3d at 1057 ("In addition to the relatedness of products, [the parties] both utilize the Web as a marketing and advertising facility, a factor that courts have consistently recognized as exacerbating the likelihood of confusion").

g.   <u>The Likelihood of Expansion into Other Markets.</u>

The factor examining the likelihood of expansion of the product lines does not apply here, because the parties already offer the same services and goods. Where the goods and services offered by a mark-holder and alleged infringer "are already related . . . this factor is irrelevant." *Playboy Enters., Inc. v. Netscape Commc'ns Corp*., 354 F.3d 1020, 1029 (9th Cir. 2004).

19

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

h.      The Degree of Care Likely to Be Exercised by Purchasers.

The final *Sleekcraft* factor is the type of goods and the degree of care likely to be exercised by the purchaser.  Here, the casino services are generally leisure purchases and the consumers are not typically sophisticated or highly specialized. The degree of care likely to be exercised by this type of purchaser is likely to be relatively low.  A consumer exercising a low level of care is not likely to investigate the differences between the companies involved or realize that the products or services originate from a different source.

Moreover, when marks are virtually identical, as they are here, the degree of care consumer care is irrelevant.  *See Electropix v. Liberty Livewire Co.*, 178 F. Supp. 2d 1125, 1134 (C.D. Cal. 2001) ("However, virtually no amount of consumer care can prevent confusion where two entities have the same name.  It is irrational to expect that even the most sophisticated consumer will exercise the kind of scrupulous examination that would enable him or her to discern the difference between 'Livewire' and 'Live Wire.'").

**C.      Plaintiff Will Succeed on Its False Designation of Origin Claim**

Plaintiff is also likely to succeed on its false designation of origin claim under 15 U.S.C. § 1125(a).  A false designation of origin claim "turns on the likelihood of confusion" as well.  *Mortgage Electr. Registration Sys., Inc. v. Brosnan*, 2009 WL 3647125, at *3 (N.D. Cal., Sept. 4, 2009).

In order to prevail on a false designation of origin claim, a plaintiff must show that the defendant has used in commerce a word, term, name, symbol, and/or device which "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."  15 U.S.C. § 1125(a)(1)(A).

In this case, Defendants are using the infringing "LUCKY LADY" name in commerce and are likely to cause confusion or mistake regarding the connection

20

between Plaintiff and Defendants, and/or the origin, sponsorship, or approval of Defendants' casino services and related goods and services. By Defendants' use of an almost identical mark to market casinos and related goods and services, consumers are likely to assume either that Plaintiff has authorized Defendants to use the registered marks, or that Plaintiff is actually the source of Defendants' casino services. Neither of these situations are the case.

### D.   Plaintiff Is Likely to Succeed on Its Unfair Competition Claim

Unfair competition claims under Business & Professions Code § 17200 are "substantially congruent to claims under the Lanham Act." *Entrepreneur Media*, 279 F.3d at 1153. California Business & Professions Code section 17200 makes actionable any 'unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "[T]he 'unlawful' prong of the UCL effectively turns a violation of the underlying law into a per se violation of the UCL." *Williams v. Wells Fargo Bank*, N.A., 2010 U.S. Dist. LEXIS 91158, at *6 (N.D. Cal. Aug. 9, 2010). "Moreover, a business practice may be unfair or fraudulent under the UCL, even if the practice does not violate any law." *Brosnan*, 2009 WL 3647125, at *8.

Here, Plaintiff will likely prevail on its UCL claim because, as described above, it has demonstrated that it will likely prevail on its predicate Lanham Act claims. Defendants' knowing and intentional misappropriation of Plaintiff's marks is an unlawful, unfair, and fraudulent business practice.

### E.   Plaintiff Will Suffer Irreparable Harm without Preliminary Relief

"In trademark cases, courts have found irreparable harm in the loss of control of a business' reputation, a loss of trade and loss of goodwill." *CytoSport, Inc. v. Vital Pharms., Inc.*, 617 F. Supp. 2d 1051, 1080 (E.D. Cal. 2009). "Trademarks serve as the identity of their owners and in them resides the reputation and goodwill of their owners. Thus, if another person infringes the marks, that person borrows the owner's reputation, whose quality no longer lies within the owner's control." *Id.* "A trademark owner's loss of the ability to control its marks,

21

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

thus, creates the potential for damage to its reputation." *Id.* "Potential damage to reputation constitutes irreparable injury for the purpose of granting a preliminary injunction in a trademark case." *Id.*; *see also Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.,* 736 F.3d 1239 (9th Cir. 2013) ("Evidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm); *7-Eleven, Inc. v. Dhaliwal,* 2012 WL 5880462, at *7 (E.D. Cal., Nov. 21, 2012) ("lack of control over its trademarks due to [defendant's] unauthorized use is enough to show irreparable harm").

The value of goodwill and good business reputation is so ingrained in the law that "[t]he mere possibility that the practices of the second user of the trademark may stain the owner's reputation in the minds of his customers is also enough to afford the infringed [the] right to be protected." *Laverne Internat'l, Ltd. v. Am. Inst. of Interior Designers, Inc.,* 353 F.Supp. 659, 663 (S.D.N.Y. 1973). Courts have repeatedly recognized that the damages caused by trademark infringement "are by their very nature irreparable and not susceptible of adequate measurements for remedy at law." *Opticians Co. v. Warner Commc'ns, Inc.,* 675 F.2d 852, 858 (7th Cir. 1982); *see also Stork Rest., Inc. v. Sahati,* 166 F.2d 348, 354 (9th Cir. 1948).

Here, the loss of goodwill and control suffered by Plaintiff due to the use of the infringing "LUCKY LADY" name by Defendants would be irreparable. It would be difficult to calculate how much goodwill Plaintiff's LADY LUCK® and LUCKY LADY® marks will continue to lose as a result of Defendants' actions. (Blinn Dec., ¶ 48.) The longer the Defendants are allowed to use the infringing "LUCKY LADY" name, the less consumers will view the mark as a source identifier and the less consumers will be able to distinguish that Plaintiff is a different source than Defendants, especially considering that Plaintiff and Defendants are offering the same types of casino services. (*Id.*, ¶ 49.) Additionally, it would be difficult to calculate the amount of lost sales or the diminution in the value of Plaintiff's marks due to the Defendants' use of the infringing "LUCKY

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

LADY" name.  (*Id.*, ¶ 50.)

Similarly, it would be difficult to track the number of consumers who intend to purchase casino services from Plaintiff, but instead are confused into coming into Defendants' casino.  (*Id.*, ¶ 51.)  Also difficult to ascertain would be the number of customers who are dissatisfied with Defendants' casino services, and mistakenly avoid and unfavorably publicize Plaintiff's casino services to friends and family.  (*Id.*, ¶ 52.)  Due to the difficulty in calculating the value of the goodwill and sales that have been lost and will continue to be lost if injunctive relief is not granted, Plaintiff will suffer irreparable harm as a result of Defendants' actions.  (*Id.*, ¶ 53.)

Defendants' knowing and intentional misappropriation of Plaintiff's LADY LUCK® and LUCKY LADY® marks for casinos and related goods and services will cause irreparable harm to Plaintiff.  Because Defendants are using the infringing "LUCKY LADY" name, they have caused Plaintiff to lose control over its business reputation, and pose a serious threat to the decades of goodwill that Plaintiff has established in casino and related services.  The lewd and suggestive nature of the Defendants' ongoing use of Plaintiff's marks and the perceived association with Flynt's strip clubs and pornographic publications heightens the immediate and irreparable injury to Plaintiff's goodwill.  (*Id.*, ¶ 37-39, 47.)  And that irreparable harm is real and significant, not speculative or remote.  Moreover, Plaintiff has established that "remedies available at law, such as monetary damages, are inadequate to compensate for that injury."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988) ("Injunctive relief is the remedy of choice for trademark or unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement.").

## F.     The Balance of Equities Favors Isle of Capri

The balance of equities tips sharply in favor of Isle of Capri.  The underlying purpose of the balancing analysis is to ensure that the injunction will not harm the

Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

infringer more than denial of the injunction will harm the trademark's owner. *Opticians*, 920 F.2d at 197.  Should the temporary restraining order, and ultimately the injunction, not be granted, Plaintiff stands to lose control over its marks and goodwill—the foundation of its strong brand.  It will have no control over the quality of the goods and services sold by Defendants under its marks, and would be vulnerable to the degradation of those marks through Defendants' operation of a casino with an unsavory image under the "LUCKY LADY" name.

The irreparable harm Plaintiff is suffering and will continue to suffer if Defendants are not enjoined far outweighs any impact on Defendants.  Defendants have been adequately forewarned of Plaintiff's intention to protect its rights under the LADY LUCK® and LUCKY LADY® marks (Blinn Dec., ¶¶ 32, 35 and Exs. 7-8), and granting the injunction will not prevent Defendants from selling their casino and related services under a different name that does not infringe Plaintiff's registered marks.  Indeed, Defendants already operate a separate casino in California under the well-recognized "Hustler" name.  Further, Isle of Capri's TRO – by design – is narrowly tailored at this stage to address the most prominent injury incurred and that it will continue to incur from the infringement of Plaintiff's registered marks, and does not preclude Defendants from operating their casino under a different and non-infringing name, including "Larry Flynt's" or "Hustler"—both of which as discussed above are well-known and highly recognizable names/brands.  The Defendants' casino is currently undergoing major renovations (Hogan Dec., ¶¶ 7-8 and Ex. 4), so the relative inconvenience in correcting signage will be only minimal.

While Defendants may incur some minimal expenses to change names, these expenses are only a consequence of Defendants' knowing choice to use a name that they knew was nationally registered and owned and used by Plaintiff for casinos and related goods and services.  Such choice was unjustifiable given the obvious confusion that would occur.  *See Watts Health Sys., Inc. v. United Health Care*

*Corp.*, 960 F. Supp. 1431, 1437 (C.D. Cal. 1996) (where defendant "was well aware" of plaintiff's use, "any monies expended … in promoting, advertising or otherwise using the … mark was accomplished at its own peril"); *American Home Prods. Corp. v. Johnson Chem. Co.*, 589 F.2d 103, 107 (2d Cir. 1978) ("one who adopts the mark of another for similar goods acts at his own peril").

### G.   A Preliminary Injunction is in the Public Interest

The requested injunction is in the public interest.  "[T]he entire *raison d'etre* for regulating the use of . . . registered trademarks . . . is to protect the public from confusion as to the origin and source of the products offered for sale."  *Paramount Pictures v. Dorney Park Coaster Co.*, 698 F. Supp. 1274, 1285 (E.D. Pa. 1988). Thus, "[i]n the trademark context, courts often define the public interest at stake as the right of the public not to be deceived or confused."  *CytoSport*, 617 F.Supp.2d at 1081; *Earth Island Inst. v. Evans*, 256 F.Supp.2d 1064, 1077 (N.D. Cal. 2003) ("the public interest is served by avoiding consumer confusion in the marketplace").

Here, Defendants' continued use of the LADY LUCK® and LUCKY LADY® marks causes confusion among customers who have a right not to be deceived or confused by the Defendants' unauthorized use of the marks.  Unless the Defendants' use is enjoined, members of the public will continue to be deceived or confused by the Defendants' use of the marks.  "[P]reventing deception of the public is itself in the public interest."  *SK & F, Co. v. Premo Pharm. Labs.*, 625 F.2d 1055, 1057 (3d Cir. 1980).

## IV.   CONCLUSION

By reason of the foregoing, Plaintiff is entitled to injunctive relief against Defendants, and anyone acting in concert with Defendants, to restrain further or threatened acts of infringement.  To protect Plaintiff and the public at large, this Court should issue the temporary restraining order requested herein and set a hearing regarding preliminary injunction at which time the Court should issue a preliminary injunction enjoining the use of the infringing "LUCKY LADY" name.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

25

Dated:   August 16, 2016

Respectfully submitted,
**BRYAN CAVE LLP**
ROBERT G. LANCASTER

By: /s/ Robert G. Lancaster
          Robert G. Lancaster

Daniel M. O'Keefe, *pro hac vice pending*
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO  63102-2750
Tel:  (314) 259-2000
Fax:  (314) 259-2020
E-mail:  dmokeefe@bryancave.com


**DAVIS McGRATH LLC**
William T. McGrath, *pro hac vice pending*
Ross M. Drath, *pro hac vice pending*
125 South Wacker Drive, Suite 1700
Chicago, Illinois 60606
Telephone:  (312) 332-3033
Fax:  (312) 332-6376

Attorneys for Plaintiff
ISLE OF CAPRI CASINOS, INC.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1159255.3          *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER