UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:16-cv-06148-CAS (MRWx) | Date | November 1, 2016 |
|---|---|---|---|
| Title | ISLE OF CAPRI CASINOS, INC. V. LARRY FLYNT; ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) - PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION (Filed August 16, 2016, Dkt. 9)

## I.   INTRODUCTION

On August 16, 2016, Isle of Capri Casinos, Inc. ("Capri") filed this action against Larry Flynt, both individually and as trustee of Larry Flynt Revocable Trust, Casino, LLC, and Does one through ten, inclusive.  Dkt. 1.  Plaintiff alleges (1) trademark infringement, pursuant to 15 U.S.C. § 1114 (section 32 of the Lanham Act); (2) false designation of origin, pursuant to 15 U.S.C. § 1125(a) (section 43(a) of the Lanham Act); (3) federal trademark counterfeiting, pursuant to 15 U.S.C. § 1114; and (4) violations of California's unfair competition law ("UCL"), pursuant to California Business and Professions Code §§ 17200 et seq. Id.  The gravamen of plaintiff's complaint is that defendants operate a casino, Larry Flynt's Lucky Lady Casino ("defendants' Casino"), which infringes upon several of plaintiff's "Lady Luck" trademarks as well as plaintiff's "Lucky Lady" trademark.

On August 16, 2016, plaintiff filed an application seeking a temporary restraining order and preliminary injunction against defendants' operation of Larry Flynt's Lucky Lady Casino in violation of plaintiff's marks.  Dkt. 9.  On August 18, 2016, Flynt filed an opposition to plaintiff's application.  Dkt. 24.  On August 22, 2016, plaintiff filed a reply in support of it's application.

On August 22, 2016, the Court denied plaintiff's application for a temporary restraining order and set the matter for further briefing regarding the issuance of an order to show cause re: preliminary injunction.  Dkt. 32.  On September 6, 2016, Flynt filed a further opposition to plaintiff's application for a preliminary injunction.  Dkt. 35.  On

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:16-cv-06148-CAS (MRWx) | Date | November 1, 2016 |
|---|---|---|---|
| Title | ISLE OF CAPRI CASINOS, INC. V. LARRY FLYNT; ET AL. | | |

September 12, 2016, plaintiff filed a further reply. Dkt. 43. In support of plaintiff's September 12, 2016, reply, plaintiff submitted a Rule 26 Expert Disclosure and Preliminary Expert Report by David W. Stewart ("the initial Stewart Report"). See Dkt. 45-1.

On September 21, 2016, Flynt filed an objection to the initial Stewart Report, in which Flynt requested a continuance of the preliminary injunction hearing so that Flynt may have an opportunity to review and respond to the initial Stewart Report. Dkt. 48. On September 22, 2016, the Court granted a continuance and set the matter for hearing on October 17, 2016.[1] Dkt. 49.

On September 23, 2016, plaintiff requested leave to file a supplement to the initial Stewart Report in light of newer survey data collected since the initial Stewart Report was filed. Dkt. 52. The Court granted leave and permitted plaintiff to submit an addendum to the initial Stewart Report ("the Stewart Report") as well as certain deposition excerpts. Dkt. 54.

On October 7, 2016, Flynt filed a response in opposition to the Stewart Report, Dkt. 55, and a response in opposition to plaintiff's deposition supplements, Dkt. 56. On October 12, 2016, plaintiff filed a supplemental reply in support of it's evidentiary submissions. Dkt. 57. On October 17, 2016, after hearing argument from the parties took the matter under submission. Dkt. 59.

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

---

[1] Plaintiff filed an opposition to Flynt's request for a continuance, which the Court received on September 22, 2016, shortly after moving the hearing on plaintiff's application for a preliminary injunction to October 17, 2016. Dkt. 50. On September 23, 2016, the Court determined that plaintiff's opposition did not alter the Court's position and the Court set a briefing schedule in regard to the initial Stewart Report. Dkt. 51.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                       'O'

| Case No. | 2:16-cv-06148-CAS (MRWx) | Date | November 1, 2016 |
|---|---|---|---|
| Title | ISLE OF CAPRI CASINOS, INC. V. LARRY FLYNT; ET AL. | | |

## II.  BACKGROUND

Plaintiff alleges that it owns and operates a number of casinos at fifteen locations across the United States.  Plaintiff is the owner of several trademarks.  Specifically, plaintiff alleges that it owns several federal registrations with the United States Patent and Trademark Office relating to the mark "Lady Luck," and one federal registration for the mark "Lucky Lady."[2]  Compl. ¶ 27.  Five of plaintiff's casinos appear to operate under the "Lady Luck" name.  Dkt. 11-1.  For example, plaintiff operates a casino called the "Lady Luck Casino" in Black Hawk, Colorado, plaintiff's nearest geographically to the Los Angeles area.  Id.

Plaintiff alleges that the operation of defendants' Casino infringes upon the aforementioned marks.  Plaintiff alleges that, in October 2014, defendants filed an intent-to-use application to register the "Larry Flynt's Lucky Lady Casino" name for casinos.  Compl. ¶4.  Defendants expressly abandoned the aforementioned application.  Id. ¶ 35.  On or around July 29, 2016, defendants' Casino opened in Gardena, California, under the name "Larry Flynt's Lucky Lady Casino."  Id. ¶ 36.  Plaintiff alleges that the goods and services offered at defendants' Casino are "identical or closely related to the goods offered" by plaintiff under several "Lady Luck" marks and it's "Lucky Lady" mark.  Id. ¶ 44.  Plaintiff further alleges that the name of defendants' Casino is "likely to cause confusion of source among consumers."  Id. ¶ 45.

---

[2] Specifically, plaintiff alleges that it owns registrations for "Lady Luck," in association with casino services (registration number: 1165866); restaurant services (registration number: 1165866); hotel services (registration number: 1530253); bar services (registration number: 1847065); gaming equipment, namely "game tables, game wheels, dice, and game chips" (registration number: 75426119); certain merchandise (registration numbers: 1650606 and 73932154); and apparel (registration number: 1650606).  Compl. ¶ 27.  Plaintiff also alleges that it owns a registration for "Lucky Lady," as use in "entertainment services, namely, slot machine games" (registration number 1528853).  Id.  Plaintiff also alleges that it has eleven pending trademark applications for "Lady Luck" in association with downloadable game programs as well as numerous consumer products.  Compl. ¶ 29.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:16-cv-06148-CAS (MRWx) | Date | November 1, 2016 |
|---|---|---|---|
| Title | ISLE OF CAPRI CASINOS, INC. V. LARRY FLYNT; ET AL. | | |

Plaintiff uses the following mark in association with it's Lady Luck Casinos:



Dkt. 45-1 at 98. Plaintiff uses the following mark in association with it's merchandise brand:



Dkt. 11-1 at 4. Defendants use the following mark in association with defendants' Casino:



Dkt. 52-5.

Plaintiff alleges that defendants' infringing activities are likely to cause irreparable harm to plaintiff's marks because of the "lewd and suggestive nature" of defendants' activities and Flynt's other businesses. Id. ¶¶ 37-45. Flynt is the founder of Hustler magazine, operates strip clubs, and operates another casino in the Los Angeles area known as the "Hustler Casino." Id. ¶¶ 37-38. Plaintiff alleges that defendants have similarly integrated a lewd theme into defendants' Casino, including, for instance, a photograph of a nude woman on the casino's gambling chips. Id. ¶¶39-40.

## III. LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-06148-CAS (MRWx) | Date | November 1, 2016 |
| Title | ISLE OF CAPRI CASINOS, INC. V. LARRY FLYNT; ET AL. | | |

must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Am. Trucking Ass'n, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir.2009). Alternatively, " 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1132 (9th Cir.2011). A "serious question" is one on which the movant "has a fair chance of success on the merits." Sierra On–Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1421 (9th Cir.1984). Under either formulation, demonstrating a likelihood of success on the merits and irreparable harm is "most critical." Nken v. Holder, 556 U.S. 418, 434 (2009).

## IV.   DISCUSSION

### A.   Likelihood of Success on the Merits

An understanding of the nature of plaintiff's claims is crucial to understanding plaintiff's likelihood of success on the merits. Plaintiff's first and third claims are governed by 15 U.S.C. § 1114, which prohibits the "use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services [when] such use is likely to cause confusion, or to cause mistake. . . ." Plaintiff's second claim is governed by 15 U.S.C. § 1125(a), which prohibits the use in commerce of "any word, term, name, symbol, or device," which "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person. . . ." Plaintiff's claims for trademark infringement and plaintiff's fourth claim pursuant to California's unfair competition law are evaluated under the same standard. See Cleary v. News Corp., 30 F.3d 1255, 1262–63 (9th Cir.1994) ("[S]tate common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act"). To prevail on its Lanham Act claims, plaintiff must prove that "(1) it has a protectible ownership interest in the mark; and (2) that the defendant[s'] use of the mark is likely to cause customer confusion." Department of Parks and Recreation for the State of California v. Bazaar del Mundo Inc., 448 F.3d 1118, 1124 (9th Cir.2006). Accordingly, to establish any of plaintiff's claims,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:16-cv-06148-CAS (MRWx) | Date | November 1, 2016 |
|---|---|---|---|
| Title | ISLE OF CAPRI CASINOS, INC. V. LARRY FLYNT; ET AL. | | |

plaintiff must establish that defendants are using a mark that is likely to cause consumer confusion as compared to plaintiff's protected mark or marks. See Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1046 (9th Cir. 1999).

The Ninth Circuit applies the eight-factor Sleekcraft test to determine whether a likelihood of confusion exists. AMF v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir.1979). The factors are: (1) the strength of the plaintiff's mark; (2) the relatedness or proximity of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the degree to which the parties' marketing channels converge; (6) the type of goods and degree of care purchasers are likely to exercise in selecting the goods; (7) evidence of the defendant's intent; and (8) the likelihood that the parties will expand their product lines. Sleekcraft, 599 F.2d at 348. The factors "should not be rigidly weighed," Dreamwerks Prod. Grp., Inc. v. SKG Studio, 142 F.3d 1127, 1129 (9th Cir.1998), but are instead "intended to guide the court in assessing the basic question of likelihood of confusion," E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1290 (9th Cir.1992). The likelihood of confusion test considers whether "the similarity of the marks is likely to confuse customers about the source of the products." Id.

    **1.    Strength of Plaintiff's Marks**

A mark's strength is based on its conceptual strength and strength in the marketplace. See GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1207 (9th Cir.2000). Conceptual strength, in turn, depends on the mark's characterization: the strongest marks are "arbitrary" ones and "suggestive" marks; the weakest are "descriptive" and "generic" marks. See Sleekcraft, 599 F.2d at 349. "In between lie suggestive marks . . . [a]lthough less distinctive than an arbitrary or fanciful mark and therefore a comparatively weak mark." Id. Weaker marks are afforded less protection than strong ones. See Matrix Motor Co. v. Toyota Jidosha, 290 F.Supp.2d 1083, 1091 (C.D.Cal.2003).

The parties appear to agree that plaintiffs' "Lady Luck" and "Lucky Lady" marks are suggestive. The Court concurs with the parties. Both marks require some imagination to understand their significance in their respective commercial contexts. See Zobmondo Entm't, LLC v. Falls Media, LLC, 602 F.3d 1108, 1116 (9th Cir. 2010) (applying an "imagination test" which asks "whether a mental leap is required to understand the mark's relationship to the product" (quotation omitted)). However, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:16-cv-06148-CAS (MRWx) | Date | November 1, 2016 |
|---|---|---|---|
| Title | ISLE OF CAPRI CASINOS, INC. V. LARRY FLYNT; ET AL. | | |

connection between each mark and gambling is close and somewhat obvious, weakening their respective strength. Additionally, "placement on the spectrum of distinctiveness does not end the enquiry as to the strength of a mark: it is only the first step. The second step is to determine the strength of this mark in the marketplace." McCarthy on Trademarks and Unfair Competition 11:2 (4th ed.).

Although plaintiff's marks are suggestive, they are comparatively weak and entitled to only narrow protection. "Undoubtedly, common phrases and bits of slang which are in routine everyday use are relatively weak as trademarks simply because their common occurrence makes it difficult for them to stand out as source identifiers." Id. at11:87 (4th ed.); see also GoTo.com, 202 F.3d at 1207 ("The more likely a mark is to be remembered and associated in the public mind with the mark's owner, the greater protection the mark is accorded"). The phrase "lady luck" has been part of the American vernacular for decades and is commonly used by gamblers as an abstract personification of fate or destiny. Routine use of "lady luck" among gamblers makes it difficult for the phrase to stand out as a source identifier and weakens plaintiff's associated marks.

Furthermore, "[w]hen similar marks permeate the marketplace, the strength of the mark decreases." One Indus., LLC v. Jim O'Neal Distrib., Inc., 578 F.3d 1154, 1164 (9th Cir. 2009). "Where the market is inundated by products using the particular trademarked word, there is a corresponding likelihood that consumers 'will not likely be confused by any two in the crowd.'" Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC, 680 F. Supp. 2d 1107, 1119 (N.D. Cal. 2010) (quoting Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1144 (9th Cir.2002)). In this case there appear to be several registered trademarks for casinos whose names contain the word "Lucky."[3] Although none contain the entire phrase "Lucky Lady" or the phrase "Lady Luck" the widespread use of the word "lucky" to describe casinos and various gambling related services and products further weaken plaintiff's marks.

In regard to plaintiff's "Lucky Lady" trademark, plaintiff appears to use this mark on its website in association with its slot machines and what plaintiff describes as "its

---

[3] Specifically, the Court is aware of registrations for "Lucky Lil's," "Lucky Lil's Casino," "Lucky Chances," "Lucky Click," "Lucky Club," and "Lucky Club Casino." See Brown Decl. ¶ 8, Dkt. 25.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL   'O'

| Case No. | 2:16-cv-06148-CAS (MRWx) | Date | November 1, 2016 |
|---|---|---|---|
| Title | ISLE OF CAPRI CASINOS, INC. V. LARRY FLYNT; ET AL. | | |

online social casino gaming services." See e.g. Suppl. Blinn Decl. ¶ 6. Advertising expenditures "can transform a suggestive mark into a strong mark . . . [because it may lead to] actual marketplace recognition." Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1058 (9th Cir. 1999). However, other than the limited use of the phrase on its website, plaintiff does not present evidence that its "Lucky Lady" mark is commercially strong. Compare Lahoti v. Vericheck, Inc., 636 F.3d 501, 509 (9th Cir. 2011) (affirming finding that mark was strong where plaintiff promoted it and presented evidence that mark had expanding territory and number of clients) with Brookfield Commc'ns, 174 F.3d at 1058 ("Moviebuff" mark is commercially weak despite $100,000 annual advertising spent promoting mark). Accordingly, "Lucky Lady" is also a comparatively weak mark, despite plaintiff's limited use of the mark in association with plaintiff's games.

  **2.   Relatedness and Proximity**

  For related goods, the danger presented is that the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists. Sleekcraft, 599 F.2d at 350. Both parties operate casinos. Plaintiff's "Lady Luck" mark is registered for use in association with plaintiff's casinos. Compl. ¶ 27. Plaintiff alleges that defendants' infringement stems from the use of the phrase "Lucky Lady" in the name of defendants' Casino. Flynt argues that defendants' Casino is qualitatively different from plaintiff's casinos because defendants' Casino is prohibited from offering slot machines. Although the parties' casinos have differences[4], the parties' marks appear to be used in closely related contexts and this factor favors plaintiff.

  However, there are several trademarks at issue in different contexts, some of which are less clearly related to defendants' alleged infringement than others. For instance, plaintiff has only registered "Lucky Lady" for use in "entertainment services, namely, slot machine games." Compl. ¶ 27. Plaintiff does not direct the Court to any analogous use of the "Lucky Lady" mark by defendants. Plaintiff does not allege that defendants operate slot machines at defendants' Casino, nor does the State of California permit slot machines. See Cal. Penal Code § 330a(a) (making possession or operation of a slot

---

  [4] As plaintiff argues, defendants' Casino also appears to have incorporated a more adult theme.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-06148-CAS (MRWx) | Date | November 1, 2016 |
| Title | ISLE OF CAPRI CASINOS, INC. V. LARRY FLYNT; ET AL. | | |

machine a misdemeanor crime). Whereas it is relatively clear that the parties' casinos are related services, it is less clear that defendants' Casino competes with plaintiff's slot machines.[5]

### 3. Similarity of the Marks

To address the similarity of the marks, a court considers the "sight, sound, and meaning" of the marks, taking into consideration how the marks are encountered in the marketplace. Sleekcraft, 599 F.2d at 351; GoTo.com, 202 F.3d at 1205–06. Similarities are to be "weighed more heavily than differences." GoTo.com, 202 F.3d at 1206. In addition, where the parties offer competing goods, a lower level of similarity will suffice to support a finding of a likelihood of confusion. Sleekcraft, 599 F.2d at 350. However, even identical marks may be readily distinguishable in light of other "packaging or promotional material" affecting "the context in which they are encountered." Lindy Pen Co. v. Bic Pen Corp., 725 F.2d 1240, 1245 (9th Cir. 1984) (parties marks on pens were identical when viewed in isolation but dissimilar where each was surrounded by other branding, company marks, and distinctive packaging).

Plaintiff appears to use the mark "Lucky Lady" to market slot machines on its website and in association with certain free online games. See Suppl. Blinn Decl. ¶ 6. In both contexts, the phrase is formatted the same way as other text on plaintiff's webpages. See Id. at Ex. 2, 3. Although defendants' casino name and plaintiff's "Lucky Lady" mark both contain the phrase "Lucky Lady," the marks are easily distinguished by their contexts, formatting, coloring, and meaning. For instance, whereas defendants' use indicates the name of a casino and is accompanied by the phrase "Larry Flynt's" as well as a gold heart, plaintiff's use is connected to specific online games offered by plaintiff. Plaintiff appears to use the "Lucky Lady" mark in particular subsections of its webpages, surrounded by other text and more prominent imagery. Meanwhile, defendants' casino name features prominently in defendants' marketing and webpages, surrounded by dissimilar promotional materials. The appearance and meaning of each are dissimilar

---

[5] Plaintiff also appears to use the "Lucky Lady" mark to promote free online games. In this context, the relatedness factor weighs in favor of defendants because they do not operate online games.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      'O'

| Case No. | 2:16-cv-06148-CAS (MRWx) | Date | November 1, 2016 |
|---|---|---|---|
| Title | ISLE OF CAPRI CASINOS, INC. V. LARRY FLYNT; ET AL. | | |

because of the different context in which consumers encounter them. With respect to plaintiff's "Lucky Lady" mark, this factor weighs in favor of defendants.

    This factor still weighs in favor of defendants with respect to plaintiff's "Lady Luck" marks. Plaintiff challenges several distinct uses of the "Lucky Lady" phrase by defendants. Having reviewed the evidentiary submissions of the parties, it appears that defendants' most similar use to plaintiff's "Lady Luck" marks occurs on defendants' Casino employee uniforms, where the phrase "Lucky Lady" appears alone in cursive orange lettering. However, customers only encounter this specific use of the phrase after encountering numerous other dissimilar uses by defendants. Defendants' Casino billboards, website, exterior signage, and gaming tables all appear to use the phrase "Lucky Lady" in white, print, capital letters prefaced by the words "Larry Flynt's," separated by a heart symbol, and followed by the word "CASINO." In light of the context in which the public encounters defendants' use of the phrase "Lucky Lady" in the marketplace, defendants' mark is dissimilar from plaintiff's "Lady Luck Casino" mark and "Lady Luck" merchandise brand.

    **4.**      **Evidence of Actual Confusion**

    "Perhaps because of the difficulty in garnering such evidence . . . [s]urvey evidence may establish actual confusion." <u>Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.</u>, 618 F.3d 1025, 1035 (9th Cir. 2010) (internal quotations omitted).

    Plaintiff hired David Stewart, a professor of marketing and law at Loyola Marymount University, to design and implement a survey in order to "determine the degree to which consumers confuse the source and associations of the 'Larry Flynt's Lucky Lady Casino logo,' with Isle of Capri's Lady Luck Casino mark." Dkt. 52-2 at 10. The Stewart Report presents Stewart's findings based on a survey of 400 consumers over 21 years old who reside in Southern California and either visited a casino in the past twelve months or planned to do so in the following twelve months. <u>Id.</u> at 12. The survey followed what is known as the Squirt protocol, named for its use in <u>Squirtco v. Seven-Up</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      'O'

| Case No. | 2:16-cv-06148-CAS (MRWx) | Date | November 1, 2016 |
|---|---|---|---|
| Title | ISLE OF CAPRI CASINOS, INC. V. LARRY FLYNT; ET AL. | | |

Co., 628 F.2d 1086 (8th Cir. 1980).[6] From the survey, Stewart concluded that there was a 31.5% net likelihood of confusion. Id. at 13.

      Having reviewed plaintiff's expert disclosure and the Stewart Report, the report appears to satisfy the requirements of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), despite several important flaws. McCarthy at 32:158 ("The usual rule is that a professionally conducted survey that relates to the facts in issue will be admitted into evidence" and its weight will be reduced by any shortcomings); see also Wendt v. Host Int'l, Inc., 125 F.3d 806, 814 (9th Cir. 1997) ("Challenges to survey methodology go to the weight given the survey, not its admissibility").

      "The closer the survey methods mirror the situation in which the ordinary person would encounter the trademark, the greater the evidentiary weight of the survey results." McCarthy at 32:163. Regarding the general acceptance of the Squirt protocol, Stewart cites an article by Jerre Swann, Likelihood of Confusion Studies and the Straitened Scope of Squirt, 98 Trademark Rep. 739 (2008). Dkt. 52-2 at 11 fn. 1. As Flynt points out, however, the Swann article acknowledges significant limitations upon the use of the Squirt protocol. Specifically, Swann notes that "[a] weak mark should not be placed in 'recent' memory/ 'cognitive workspace' if it would not appear there under normal market conditions. To do so might give a weak mark artificial 'reach' that it does not intrinsically possess." Jerre B. Swann, 98 Trademark Rep. at 753. "A Squirt format

---

      [6] Participants were first shown plaintiff's Lady Luck Casino mark followed by five other marks, namely, the Larry Flynt's Lucky Lady Casino logo; a Casino Royale logo; the Agua Caliente Casino, Resort, Spa logo; the Lucky Gem Casino logo; and the Winner Casino logo. Participants were then asked:

> Now thinking back to the first picture you saw, do you think that any of the logos on this screen are used by the same company or by a company that is affiliated, associated or connected with the company that uses the logo in the first picture you saw earlier? If you don't know please feel free to say so.

Id. at 22. Of the 400 participants, 179 answered yes and subsequently identified defendants' mark. Fifty-three participants identified the Lucky Gem Casino mark.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:16-cv-06148-CAS (MRWx) | Date | November 1, 2016 |
|---|---|---|---|
| Title | ISLE OF CAPRI CASINOS, INC. V. LARRY FLYNT; ET AL. | | |

should thus not be used where tested brands do not proximately appear in the market." Id. In other words, because participants are primed with the senior mark immediately before being shown the junior mark, the Squirt protocol is most appropriate where a product with a weak mark is sold in close proximity to the alleged infringer in the marketplace. A survey is of little value if it asks participants to compare products or services in a way that they would not do so ordinarily. See Jordache Enterprises, Inc. v. Hogg Wyld, Ltd., 828 F.2d 1482, 1488 (10th Cir. 1987) (survey did not mimic "actual workings of the marketplace" where participants were told to examine two pairs of jeans by hand and state whether they thought the jeans were sold by the same company).

In this case, the survey is entitled to little weight because it did not replicate marketplace conditions. Unlike products sold side-by-side at a physical store, the parties' compete in a service industry across great distances. Whereas the Squirt protocol presented plaintiff's and defendants' marks one immediately after the other, that is not how consumers would ordinarily encounter them. Plaintiff's nearest Lady Luck casino, in Black Hawk, Colorado, is approximately a thousand miles from defendants' Casino. Plaintiff's other "Lady Luck" casinos operate in Iowa, Missouri, Mississippi, and Pennsylvania. Furthermore, consumers may encounter the parties' respective casino names in myriad contexts such as in direct mail, billboards, word of mouth, direct links to either parties' website, or as they pass the parties' casinos on the road. The Court has already concluded that plaintiff's marks are comparatively weak. Plaintiff has not presented evidence that, in the marketplace, consumers would typically or even occasionally have plaintiff's comparatively weak Lady Luck Casino mark readily in mind when they later observed defendants' casino name. Even those consumers who might encounter both marks in close proximity to one another on the internet[7] would still

---

[7] Plaintiff contends that an undetermined number of customers rely upon the internet to locate and choose among various casinos and that those customers would encounter both parties' marks in close proximity on the internet. However, on the present record, this contention is unsupported and speculative. Plaintiff directs the Court to deposition testimony wherein two witnesses deposed by plaintiff explain their use of the internet to compare various casinos. However, in their depositions, both witnesses claim to have selected a specific geographic place to go on vacation (Las Vegas) and subsequently used the internet to select a casino at which to stay. See Roosevelt Depo. at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-06148-CAS (MRWx) | Date | November 1, 2016 |
| Title | ISLE OF CAPRI CASINOS, INC. V. LARRY FLYNT; ET AL. | | |

encounter dissimilar marketing and promotional webpages. The Stewart survey only showed participants the parties' logos in isolation without their accompanying website contexts.

     Plaintiff's argument to the contrary is unpersuasive. Plaintiff argues that the Ninth Circuit approved of identical survey methods by Stewart in Thane Int'l, Inc. v. Trek Bicycle Corp., 305 F.3d 894, 902 (9th Cir. 2002). In Thane the Ninth Circuit considered whether one of Stewart's Squirt protocol surveys was sufficient evidence of confusion to withstand a summary judgment motion. Id. The Thane court noted that, "if a party produces evidence from which a reasonable jury could surmise that an appreciable number of people are confused about the source of the product, then it is entitled to a trial on the likelihood of confusion—although it will not necessarily prevail at that trial." Id. (quotation omitted). The court concluded that "drawing all justifiable inferences from the survey in [plaintiff's] favor as we must on summary judgment, we must conclude that the survey provides evidence from which a reasonable jury *could* conclude that [there was consumer confusion]." Id. (emphasis original). That is not the standard here. In determining whether plaintiff is entitled to a preliminary injunction, the Court is not required to draw all justifiable inferences in plaintiff's favor from the Stewart Report. At this preliminary stage, the Court concludes that the Stewart Report offers little valuable guidance regarding the risk of actual consumer confusion about the parties' casinos.

     Accordingly, this factor is of little import to the Court's analysis.

---

16:15 - 18:13; Woodward Depo. at 39:11-41:11. Neither witness claims to have seen any mark at issue here during their internet searches, nor do they describe having seen other casinos' marks. One witness provides no detail whatsoever except that he used the internet at some point to decide where to stay in Las Vegas. See Roosevelt Depo. The other describes using an internet listing to compare *prices* between casinos in Las Vegas. See Woodward Depo. These depositions simply do not support plaintiff's contention that customers would, as in Stewart's survey, see the Lady Luck Casino mark side-by-side with the Larry Flynt's Lucky Lady Casino mark on the internet while deciding whether to visit a casino in Colorado or to visit one in California.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-06148-CAS (MRWx) | Date | November 1, 2016 |
| Title | ISLE OF CAPRI CASINOS, INC. V. LARRY FLYNT; ET AL. | | |

### 5. The Remaining Sleekcraft Factors

Regarding the degree to which the parties' marketing channels converge, this factor weighs in defendant's favor. Plaintiff argues that both parties maintain a presence on the internet, however this fact is entitled to little weight. See Playboy Enterprises, Inc. v. Netscape Commc'ns Corp., 354 F.3d 1020, 1028 (9th Cir. 2004) ("the advertisers use identical marketing channels: the Internet. More specifically, each of their sites appears on defendants' search results pages. Given the broad use of the Internet today, the same could be said for countless companies); Network Automation, Inc. v. Advanced Sys. Concepts, Inc., 638 F.3d 1137, 1151 (9th Cir. 2011) ("Today, it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion"). In evaluating the likelihood of consumer confusion here, it is more important that prospective consumers must physically visit the casinos to purchase either parties' gambling services. Accordingly, defendants market to those in close proximity to their casino with billboards around Los Angeles. Plaintiff does not purport to have billboards in Los Angeles and plaintiff's nearest casino is over 1,000 miles away. Just as there is less risk that a consumer will accidentally enter one casino instead of another hundreds of miles away, there is less risk that a consumer will be confused by defendants' advertising in the local market. Accordingly, this factor weighs in favor of defendants.

The next two factors are neutral. "[T]he typical buyer exercising ordinary caution," Sleekcraft, 599 F.2d at 353, in the decision to visit a particular casino does not appear to be particularly thoughtful or, alternatively, careless. Nor is the defendants' intent instructive here. Although defendants' had constructive notice of plaintiff's registered trademarks, that does not necessarily mean that defendants intended to deceive consumers with their casino name. Plaintiff has not presented evidence that defendants acted in bad faith by selecting their casino name. "Good faith is less probative of the likelihood of confusion." Id. at 354.

Finally, the parties already compete in the same industry. Accordingly, with respect to plaintiff's "Lady Luck" marks, the Court gives the "likelihood of expansion" factor no weight. Playboy, 354 F.3d at 1029. However, defendants do not compete in the slot machine market, wherein plaintiff has registered the "Lucky Lady" mark. Expansion into the slot machine industry would place defendants' gambling license at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-06148-CAS (MRWx) | Date | November 1, 2016 |
| Title | ISLE OF CAPRI CASINOS, INC. V. LARRY FLYNT; ET AL. | | |

risk in the State of California. See Cal. Bus. & Prof. Code § 19858 (prohibiting any person from holding a state gambling license if they possess "any financial interest" in an organization that possesses or operates slot machines). Accordingly, with respect to plaintiff's "Lucky Lady" mark, this factor weighs in favor of defendants.

Ultimately, the factors "should not be rigidly weighed," Dreamwerks Prod. Grp., Inc. v. SKG Studio, 142 F.3d 1127, 1129 (9th Cir.1998), but are instead "intended to guide the court in assessing the basic question of likelihood of confusion," E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1290 (9th Cir.1992). "A determination may rest on only those factors that are most pertinent to the particular case before the court, and other variables besides the enumerated factors should also be taken into account based on the particular circumstances." Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1209 (9th Cir. 2012).

Regarding all of plaintiff's claims, the most important factor weighs in defendants' favor. Specifically, plaintiff's marks are comparatively weak.

Plaintiff is not likely to succeed on the merits of any claim pursuant to the "Lucky Lady" mark because defendants' casino name does not appear likely to confuse consumers in search of a particular slot machine brand they saw online or at a casino somewhere else in the country. With respect to plaintiff's "Lucky Lady" mark, the fact that defendants are prohibited from owning or operating slot machines is especially important. Plaintiff uses the "Lucky Lady" mark to promote slot machines at casinos at least one thousand miles from defendants' Casino. Additionally, in part because of their use in somewhat different markets, and in part because of other accompanying context, the defendants' use of the phrase "Lucky Lady" is dissimilar from plaintiff's protected mark. The two are easily distinguished by their respective contexts. Accordingly, in light of the foregoing and the comparative weakness of the mark, plaintiff has not demonstrated it is likely to succeed on the merits of claims based on the "Lucky Lady" mark.

Plaintiff's claims based on various "Lady Luck" marks fare no better. Plaintiff's merely suggestive marks are dissimilar from defendants' casino logos and marketing when viewed in context. See Lindy Pen, 725 F.2d 1240. Plaintiff does not appear likely to succeed on the merits of its "Lady Luck" based claims. However, even assuming that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      'O'

| Case No. | 2:16-cv-06148-CAS (MRWx) | Date | November 1, 2016 |
|---|---|---|---|
| Title | ISLE OF CAPRI CASINOS, INC. V. LARRY FLYNT; ET AL. | | |

there are "serious questions going to the merits" of plaintiff's claims, Alliance for the Wild Rockies, 632 F.3d at 1132, plaintiff has not demonstrated that the balance of hardships tips in favor of issuing a preliminary injunction or that plaintiff will suffer irreparable harm.

    **B.    Irreparable Harm**

    "[A] plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." Caribbean Marine Serv. Co. v. Baldrige, 844 F.2d 668, 674 (9th Cir.1988) (emphasis and citations omitted). This demonstration requires evidence rather than mere speculation. See Winter, 555 U.S. at 21. Post-Winter, courts have repeatedly found that losing control of one's reputation and good will in the marketplace supports the issuance of an injunction. See, e.g., Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 841 (9th Cir.2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm"). However, "common sense and various authorities suggest that any infringement or confusion must pose a threat to the business, profits or reputation of the plaintiff in order to create a possibility of irreparable harm." Sardi's Rest. Corp. v. Sardie, 755 F.2d 719, 724-25 (9th Cir. 1985) (affirming a finding of no irreparable harm pending trial where plaintiff failed to demonstrate that infringer "would pose an imminent threat to [] restaurant's reputation even if public confusion about their relationship did occur").

    In this case, plaintiff argues that it will be injured by the loss of control of its marks. Furthermore, plaintiff argues that the association of defendants' Casino with Larry Flynt degrades plaintiff's marks because of alleged unsavory connotations and the adult theme of defendants' Casino. In support of this argument, plaintiff presents evidence that Flynt founded Hustler magazine and operates other businesses aimed at an adult audience. Plaintiff also submits gambling chips from defendants' Casino that feature a photograph of a nude woman.

    As an initial matter, the Court notes that the gambling industry is principally aimed at adults. Absent from plaintiff's submissions is evidence that the different marketing scheme of defendants' Casino *damages* plaintiff's reputation. As aptly observed by a witness for plaintiff in the Sardi's Restaurant case, "if the [infringer's] restaurant is better

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL      'O'

| Case No. | 2:16-cv-06148-CAS (MRWx) | Date | November 1, 2016 |
|---|---|---|---|
| Title | ISLE OF CAPRI CASINOS, INC. V. LARRY FLYNT; ET AL. | | |

than mine . . . I would be damaging him." Sardi's Rest. Corp., 755 F.2d at 725. Plaintiff has not presented evidence that, if consumer confusion were to occur, the association to Flynt would damage plaintiff's goodwill and reputation in the casino industry.

Accordingly, plaintiff has failed to demonstrate irreparable injury.

### C. Balance of Hardships

"In each case, a court must balance the competing claims of injury and must consider the effect on each party of granting or withholding of the requested relief." Amoco Prod. Co. v. Vill. of Gambell, Alaska, 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987).

Defendants' present evidence that a preliminary injunction prohibiting them from using the "Lucky Lady" phrase in their promotions would force defendants to close their casino for weeks. Defendants appear to have made substantial investments in branding their casino with the "Larry Flynt's Lucky Lady Casino" name. Defendants have submitted a declaration from the Chief Operating Officer with first-hand knowledge of defendants' Casino operations, Christopher Woodward. Dkt. 28. Woodward states that defendants' Casino employs approximately 370 people and that an injunction would require the casino to close for several weeks while new signage and branding could be ordered and installed. Woodward estimates that the costs would likely be "well into the seven (7) figures." Woodward Decl. ¶ 7-8. Woodward estimates that replacing branded materials and signage would result in a loss of "nearly $500,000" and that closing the casino would result in a loss around $3,000,000. Id. ¶ 9. Plaintiff argues that defendants figures are excessive because the casino, which only recently opened, has been operating while renovations continued to occur this fall. The parties dispute exactly how expensive a casino shutdown would be and the precise effects it would have upon defendants' hundreds of employees. However, the Court need not speculate as to the *exact* cost to defendants of removing and replacing all of defendants' use of the "Lucky Lady" phrase pending a trial. It appears that defendants' costs, should an injunction issue, would be substantial.

Weighing the speculative risk of damage to plaintiff's reputation and goodwill, discussed supra, against defendants' potential costs and injury should a preliminary

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:16-cv-06148-CAS (MRWx) | Date | November 1, 2016 |
|---|---|---|---|
| Title | ISLE OF CAPRI CASINOS, INC. V. LARRY FLYNT; ET AL. | | |

injunction be issued, the Court concludes that the balance of hardships weighs in favor of defendants.

In order to warrant a preliminary injunction, plaintiff must demonstrate that it is likely to succeed on the merits, will suffer irreparable harm unless a preliminary injunction is issued, and that the balance of hardships tips in plaintiff's favor. Am. Trucking Ass'n,, 559 F.3d at 1052. At this early stage in the action, plaintiff does not appear likely to succeed on the merits because plaintiff has not demonstrated a likelihood of confusion between plaintiff's marks and defendants' casino name. Nor has plaintiff demonstrated that it will suffer irreparable injury before the matter can be tried on its merits. Finally, assuming arguendo that there are serious questions going to the merits of plaintiff's claims, the balance of hardships tips in favor of defendants.

Accordingly, plaintiff's application for a preliminary injunction is **DENIED**.

## VII. CONCLUSION

Plaintiff's application for a preliminary injunction is **DENIED**.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| | Initials of Preparer | | CMJ |